**James W. Hendry**, OSB #832350
jhendry@brownsteinrask.com
BROWNSTEIN RASK LLP
1 SW Columbia Street, Ste. 900
Portland, Oregon 97204
Telephone: (503) 221-1772
Fax: (503) 221-1074
Attorney for Defendants
Lawrence Sitz & Barbara Sitz

The Honorable Karin J. Immergut

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, a foreign corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a foreign corporation<br><br>        Plaintiffs,<br><br>v.<br><br>EMERICK CONSTRUCTION, INC., aka EMERICK CONSTRUCTION COMPANY, an Oregon corporation; EMERICK RESIDENTIAL BUILDERS, LLC, an Oregon limited liability company; LAWRENCE SITZ, an individual; BARBARA SITZ, an individual; COREY LOHMAN, an individual; STACY LOHMAN, an individual<br><br>        Defendants. | Civil No. 3:25-cv-00166-IM<br><br>**Defendants Lawrence Sitz and Barbara Sitz's MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>Request for Oral Argument |

///

Page 1 – **DEFENDANTS LAWRENCE SITZ AND BARBARA SITZ'S MOTION TO SET ASIDE ENTRY OF DEFAULT**

BROWNSTEIN | RASK LLP
1 SW COLUMBIA STREET // SUITE 900
PORTLAND, OR 97204
P 503.221.1772 F 503.221.1074

## CERTIFICATE PURSUANT TO LR 7-1

Pursuant to Local Rule 7-1, counsel for the Sitzes certifies that he has made a good faith effort through telephone conferences with counsel for Plaintiffs to resolve this dispute and has been unable to do so.

## MOTION

Pursuant to Fed. R. Civ. P. 55(c), Defendants Lawrence Sitz and Barbara Sitz (the "Sitzes"), by and through their attorney, James W. Hendry, hereby request this court set aside the entries of default against them entered on March 7, 2025. Good cause exists to set aside the defaults because the Sitzes' conduct was not culpable, the Sitzes have a meritorious defense against Plaintiffs' claims against them, and Plaintiffs will suffer no prejudice from set-asides of the defaults against the Sitzes.

This Motion to Set Aside Entry of Default Against Defendants Lawrence Sitz and Barbara Sitz is based upon the subjoined Memorandum of Points and Authorities, the Declaration of Lawrence Sitz, and the Declaration of Barbara Sitz, filed contemporaneously herewith.

DATED this ___th day of May 2025.

**BROWNSTEIN RASK, LLP**

_____
James W. Hendry, OSB #832350
Attorney for Defendants Lawrence Sitz
& Barbara Sitz

/ / /

/ / /

/ / /

/ / /

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF FACTS

Lawrence Sitz ("Mr. Sitz") is a former CEO and shareholder of Defendant Emerick Construction, Inc. ("Emerick Construction"). Barbara Sitz ("Mrs. Sitz") is the wife of Lawrence Sitz. In 2020, Mr. Sitz entered into a Buyout Agreement with Defendant Corey Lohman, president of Emerick Construction, to sell him the shares of stock in Emerick Construction owned by Mr. Sitz. Pursuant to the Buyout Agreement, the Sitzes were not to be named on any future bonds for Emerick Construction. Additionally, the terms of the Buyout Agreement released the Sitzes from all Emerick Construction liabilities incurred after the execution of the Buyout Agreement.

On February 16, 2021, Mr. Lohman met with Zurich underwriter Kyle Smith to discuss removing the Sitzes as indemnitors. *See* Declaration of Defendant Corey Lohman ¶ 5. The decision to remove the Sitzes was confirmed at a meeting on November 4, 2021.

In working with Emerick Construction to obtain the Bonds, Zurich was informed by Emerick Construction that the Sitzes were no longer liable for indemnification and would not be named on future bonds. The last time Zurich requested financial records from Mr. Sitz was in 2021. *See* Declaration of Defendant Corey Lohman ¶ 9; Declaration of Defendant Lawrence Sitz ¶ 9

In 2022, Emerick Construction executed a new General Indemnity Agreement (the "2022 Indemnity Agreement") in favor of Zurich, attached hereto as **Exhibit A**. The 2022 Indemnity Agreement was executed to reflect the participation of Anura-Emerick JV, LLC and the removal of the Sitzes as indemnitors. The Sitzes are not named on that agreement in any capacity.

Page 3 – DEFENDANTS LAWRENCE SITZ AND BARBARA SITZ'S
MOTION TO SET ASIDE ENTRY OF DEFAULT

BROWNSTEIN | RASK LLP
1 SW COLUMBIA STREET // SUITE 900
PORTLAND, OR 97204
P 503.221.1772 F 503.221.1074

The Bonds that Plaintiff Zurich American Insurance Company ("Zurich") seeks indemnification for in this lawsuit (*See* Complaint, ECF 1 ¶ 25) were issued after the execution of Mr. Sitz's Buyout Agreement with Corey Lohman. At the time the Bonds were issued, it was the understanding of Emerick Construction, Larry Sitz, and Corey Lohman that the Sitzes were not named on the bonds and would not be liable for indemnification. *See* Declaration of Defendant Corey Lohman ¶ 10; Declaration of Defendant Lawrence Sitz ¶ 8.

Prior to commencing this lawsuit, Zurich communicated to Mr. Lohman and Emerick Construction that its strategy was to file a lawsuit, then stay the proceedings once negotiations had begun. Declaration of Defendant Corey Lohman ¶ 11.

On January 30, 2025, Plaintiffs filed a Complaint asserting claims of breach of contract, specific performance, and injunctive relief against the Sitzes as indemnitors of Emerick Construction, based on the 2018 Indemnity Agreement. *See* Complaint, ECF 1. On January 31, 2025, Plaintiffs filed a Verified Motion for Preliminary Injunction seeking specific performance and restricting Defendants from transferring their assets. *See* Plaintiffs' Verified Motion for Preliminary Injunction and Memorandum in Support, ECF 4 § 5.

After initiating this lawsuit, Zurich told Mr. Lohman that it would file a stay in this proceeding if Mr. Lohman posted the collateral it requested. *See* Declaration of Defendant Corey Lohman ¶ 12.

The Sitzes each were served with a Summons and Complaint on February 5, 2025. *See* Affidavit of Service for Lawrence Sitz and Affidavit of Service of Barbara Sitz, ECF 6; 7.

In response to service of process, Mr. Sitz called Mr. Lohman, who told the Sitzes that Zurich was going to stay the proceedings as soon as Mr. Lohman posted the requested collateral, and

Page 4 – DEFENDANTS LAWRENCE SITZ AND BARBARA SITZ'S
MOTION TO SET ASIDE ENTRY OF DEFAULT

BROWNSTEIN | RASK LLP
1 SW COLUMBIA STREET // SUITE 900
PORTLAND, OR 97204
P 503.221.1772 F 503.221.1074

that Mr. Lohman would contact the Sitzes if the litigation took a different turn and they needed to get involved. *See* Declaration of Defendant Lawrence Sitz ¶ 11.

On March 7, 2025, the Clerk entered default as to the Sitzes, as well as Defendants Emerick Construction and Emerick Residential Builders LLC. *See* Clerk's Entry of Default as to Emerick Construction Inc., Emerick Residential Builders LLC, Lawrence Sitz, and Barbara Sitz, ECF 18. Prior to and at the time default was entered against the Sitzes, the Sitzes were not represented by legal counsel in this matter. *See* Declaration of Defendant Lawrence Sitz ¶ 12, Declaration of Defendant Barbara Sitz ¶ 7.

After Mr. Lohman posted the collateral requested, Zurich informed him it was changing course: instead of filing for a stay as agreed by the parties, Zurich now demanded that Mr. Sitz post collateral, and informed Mr. Lohman that it would be pursuing a judgment in this matter. *See* Declaration of Defendant Corey Lohman ¶ 15.

Upon learning of Zurich's change of course, on April 29, 2025, Mr. Lohman contacted the Sitzes and informed them of Zurich's intent to pursue judgment and that the Sitzes may need to hire legal counsel. *Id.* at ¶¶ 16; Declaration of Defendant Lawrence Sitz ¶ 14. The Sitzes promptly contacted James W. Hendry and obtained his counsel. Declaration of Defendant Lawrence Sitz ¶ 15. The Sitzes are now prepared to litigate this matter. *Id.* ¶ 16; Declaration of Defendant Barbara Sitz ¶ 11.

Plaintiffs' Motion for Default Judgment Against Defendants was filed on May 1, 2025. *See* ECF 27, Motion for Default Judgment against Defendants. Despite attempts by counsel for the Sitzes to resolve this matter with counsel for Plaintiffs, Plaintiffs filed their Supplemental Briefing in connection with their Motion for Entry of Default Judgment on May 9, 2025. *See*

ECF 31, Plaintiffs' Supplemental Briefing Pursuant to Court's Order for Supplemental Briefing [ECF No. 30].

## II. ARGUMENT

### A. Because Default Judgments are Disfavored, Entries of Default Can be Set Aside for Good Cause

"[D]efault judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Therefore, "[t]he court may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). The district court's discretion to set aside is "especially broad" when considering an entry of default, rather than a default judgment. *Brady v. U.S.*, 211 F.3d 499, 504 (2000) (citing *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994)). Furthermore, "[o]ur rules for determining when a default should be set aside are solicitous towards movants, especially those whose actions leading to the default were taken without the benefit of legal representation." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1089 (9th Cir. 2010)

In the Ninth Circuit, the court determines whether good cause exists to set aside an entry of default by considering three factors: (1) whether the defendant "engaged in culpable conduct that led to the default;" (2) whether the defendant has a "meritorious defense;" and (3) whether setting aside the default would prejudice the plaintiff. *Id.* at 1091 (citing *Franchise Holding II v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)). For the reasons set forth below, considering these three factors, good cause exists to set aside entry of default against the Sitzes.

/ / /

B. **Good Cause Exists to Set Aside Entry of Default Against the Sitzes**

i. **The Sitzes did not engage in any culpable conduct that led to the default.**

Because the Sitzes did not act in bad faith, the culpable conduct factor weighs in favor of setting aside the defaults against them.

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." (Emphasis in original.) *Signed Pers. Check*, 615 F.3d at 1092 (quoting *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695-98 (9th Cir. 2001)). "Intentionally" in this context means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; "rather, to treat a failure to answer as culpable, the movant must have acted with bad faith[.]" *Id.* at 1092. "Bad faith" includes an "intention to take advantage of the opposing party, interfere with judicial decisionmaking [sic], or otherwise manipulate the legal process." *Id.*, quoting *TCI Group*, 244 F.3d at 697.

Here, the Sitzes' conduct is not culpable because they did not act with any intention to take advantage of Plaintiffs, interfere with judicial decision-making, or otherwise manipulate the legal process. *Signed Pers. Check*, 615 F.3d at 1092. Rather, the Sitzes had a good faith belief that they were not required to respond because of the release of future liabilities in the Buyout Agreement, and the representations of Defendant Corey Lohman, based on Mr. Lohman's conversations with Zurich representatives. This good faith belief was also based on the fact that Zurich has had knowledge since at least 2021 that the Sitzes are not liable for any Emerick Construction liabilities incurred after the Buyout Agreement.

Furthermore, the Sitzes were not represented by legal counsel in this matter prior to the

Page 7 – DEFENDANTS LAWRENCE SITZ AND BARBARA SITZ'S
MOTION TO SET ASIDE ENTRY OF DEFAULT

BROWNSTEIN | RASK LLP
1 SW COLUMBIA STREET // SUITE 900
PORTLAND, OR 97204
P 503.221.1772 F 503.221.1074

entry of default. As in *Signed Pers. Check*, the fact that the Sitzes' actions leading to the default were taken without the benefit of legal representation should be weighed in favor of the Sitzes' lack of bad faith. *Id.* at 1089.

Because the Sitzes did not act in bad faith, the culpable conduct factor weighs in favor of setting aside the entry of default.

### ii. The Sitzes have a meritorious defense in this matter.

Because the Sitzes allege that Zurich agreed the Sitzes would not be liable for indemnification on the Bonds, the meritorious defense factor supports setting aside the defaults against them. In April of 2022, Zurich entered into a new indemnity agreement with Emerick Construction in which the Sitzes were not a party. Zurich was aware and in agreement that the Sitzes were no longer indemnitors, as evidenced by the fact that Zurich stopped requesting financial records from Mr. Sitz after the year 2021.

"All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense[.]" *Id.* at 1094. The question of whether the factual allegation is true is not to be determined by the court when it decides the motion to set aside the default; such question will be the subject of the later litigation. *Id.*, citing *TCI Group*, 244 F.3d at 700. In determining whether the movant has met the standard for a meritorious defense, the court may consider both legal and factual defenses. *See, e.g., Lincoln Properties LLC v. Pathik*, Case No. 3:24-cv-01832-IM, 2025 WL 644960 at *3 (D. Or. Feb. 27, 2025) (finding that the meritorious defense factor weighed in favor of movant in part because movant had raised factual disputes that if true would negate elements of plaintiff's unjust enrichment and account stated claims).

Page 8 – DEFENDANTS LAWRENCE SITZ AND BARBARA SITZ'S
MOTION TO SET ASIDE ENTRY OF DEFAULT

BROWNSTEIN | RASK LLP
1 SW COLUMBIA STREET // SUITE 900
PORTLAND, OR 97204
P 503.221.1772 F 503.221.1074

As in *Lincoln Properties*, here, the Sitzes allege factual disputes giving rise to potentially meritorious defenses to Plaintiffs' claims. The Sitzes assert that Zurich was aware that the Sitzes were no longer indemnitors and were not to be named on bonds after the Buyout Agreement, that Zurich entered into the 2022 Indemnity Agreement which the Sitzes are not party to, and that it was the understanding of the Sitzes and Emerick that the Sitzes were not named on or liable for these bonds. They also assert that Zurich stopped requesting financial documents from Mr. Sitz after the year 2021. These facts support that Zurich agreed that the Sitzes would not be liable for indemnification on the Bonds.

At this time, the court cannot consider whether the Sitzes' allegations are true; rather, it can only consider whether these facts, if true, would constitute a defense to Plaintiffs' breach of contract, specific performance, and injunctive relief claims. Because the Sitzes allege that Zurich agreed they were not liable for indemnification of the Bonds, the Sitzes have satisfied the meritorious defense requirement.

### iii. There is no prejudice to Plaintiffs from setting aside the defaults against the Sitzes, who are ready to litigate this case.

Because there will be no prejudice to Plaintiffs, the third factor weighs strongly in favor of setting aside the defaults against the Sitzes.

To be prejudicial, the harm to the plaintiffs must be more "than simply delaying resolution of the case," where such delay will not "result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI Group*, 244 F.3d at 701. Furthermore, being forced to litigate on the merits is not prejudicial "[f]or had there been no default, the plaintiff would of course have had to litigate the merits of the case, incurring the costs of doing so." *Id*. Rather than providing the plaintiff with the

Page 9 – DEFENDANTS LAWRENCE SITZ AND BARBARA SITZ'S
MOTION TO SET ASIDE ENTRY OF DEFAULT

BROWNSTEIN | RASK LLP
1 SW COLUMBIA STREET // SUITE 900
PORTLAND, OR 97204
P 503.221.1772 F 503.221.1074

"windfall" provided by a default judgment, vacating the default "merely restores the parties to an even footing in the litigation." *Id.*

Here, no prejudice to Plaintiffs will result from setting aside the defaults against the Sitzes. While setting aside the defaults may result in delaying resolution of the case, such delay is not prejudicial. *TCI Group*, 244 F.3d at 701. Moreover, the set-aside will restore the Sitzes to an even footing with Plaintiffs in the litigation. *Id.*

### III. CONCLUSION

The Sitzes are prepared to litigate this lawsuit, and the case against them should be litigated on its merits. The three set-aside factors weigh strongly in favor of setting aside these defaults. This Court should therefore grant this motion and order that the entry of default against Defendants Lawrence Sitz and Barbara Sitz be set aside.

DATED this 13th day of May 2025.

**BROWNSTEIN RASK, LLP**

_____
James W. Hendry, OSB #832350
Attorney for Defendants
Lawrence Sitz & Barbara Sitz

### CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 2408 words, including headings, footnotes, and quotations, but excluding the caption, signature block, and certificate of counsel.

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May 2025, I served the foregoing

**DEFENDANTS LAWRENCE SITZ AND BARBARA SITZ'S MOTION TO SET ASIDE ENTRY OF DEFAULT** on the following:

| | |
|---|---|
| Paul K. Friedrich | James Ewing |
| Friedrich & Dishaw, PLLC | Ryan Dry |
| 92 Lenora Street, Ste. #119 | Dry Law, PLLC |
| Seattle, WA 98121 | 909 18th Street |
| Email: paulf@fdlawpllc.com | Plano, TX 75074 |
|     Attorneys for Plaintiffs | Email: jewing@drylaw.com |
| |         rdry@drylaw.com |
| |   Pro Hac Vice Attorneys for Plaintiffs |

by **EMAILING and MAILING** a full, true and correct copy in a sealed, postage paid envelope, addressed as shown above, and deposited with the U.S. Postal Service at Portland, Oregon.

Dated: May 13, 2025

                        **BROWNSTEIN RASK, LLP**

                        _____
                        James W. Hendry, OSB #832350
                        Attorney for Defendants
                        Lawrence Sitz & Barbara Sitz



# General Indemnity Agreement

THIS GENERAL INDEMNITY AGREEMENT ("Agreement"), dated this [ 27th ] day of [ April ], 2022 by:

| |
|---|
| Anura-Emerick JV, LLC, 27501 SW 95th Ave Ste 970 Wilsonville, OR 97070, a OR LLC |
| Emerick Construction, Inc. 7855 SW Mohawk Street, Tualatin, OR, 97062, a OR Corporation |
| Joseph M. McMahon, 27501 SW 95th Ave Ste 970, Wilsonville, OR 97070 |
| Corey M. Lohman, 1409 S Maple Street, Canby, OR 97013 |
| Stacy J. Lohman, 1409 S. Maple Street, Canby, OR 97013 |
| |
| All new Indemnitors added to this Agreement by rider |

(each an "Indemnitor" and all of the above individually and collectively "Indemnitors") in favor of ZURICH AMERICAN INSURANCE COMPANY and ZURICH INSURANCE GROUP LTD and all their respective subsidiaries, affiliates and associated companies in any jurisdiction, including but not limited to FIDELITY AND DEPOSIT COMPANY OF MARYLAND, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, ZURICH INSURANCE COMPANY LTD, and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, and their respective successors and assigns (individually and collectively "Surety") with respect to any bond, undertaking, and/or obligation of suretyship or guarantee executed, provided or procured (herein "issued") by Surety (whether as surety, co-surety, reinsurer or otherwise) in the name of or on behalf of any Indemnitor, any Related Entity, any other entity on request in accordance with this Agreement, or any combination thereof, whether issued prior to or after the execution of this Agreement, and all renewals, extensions, modifications and substitutions of bonds (collectively "Bonds" and each individually a "Bond"). This Agreement shall be liberally construed so as to fully protect, exonerate, indemnify and hold Surety harmless from all liability and Loss.

As an inducement to Surety to issue or refrain from cancelling Bonds, Indemnitors represent and agree for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

1. **PREMIUMS:** Indemnitors shall promptly pay all premiums and charges of Surety for Bonds, at the current rate charged by Surety, until Surety has been provided satisfactory evidence, in its sole discretion, that it has been fully released and/or discharged from liability under such Bonds.

2. **INDEMNITY:** Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability. The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, all payments made, Loss incurred, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed. Indemnitors shall promptly, upon demand, make payment to Surety as soon as liability or Loss exists, whether or not Surety has made any payment. An itemized statement of Loss, sworn to by any officer of Surety, or the voucher or other evidence of any payment, shall be *prima facie* evidence of the fact, amount and extent of the liability of Indemnitors for such Loss. Indemnitors shall promptly, upon demand, procure the full and complete discharge of Surety from all Bonds and all liability in connection with such Bonds. If Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations.

3. **SURETY'S RIGHT TO PERFORM, SETTLE AND/OR MODIFY:** Surety shall have the absolute and unconditional right and is authorized but not required to: (a) adjust, pay, perform, decline to perform, compromise, settle, deny, litigate or otherwise resolve any Claim and/or any claim, counterclaim, defense or setoff held by or made against any Indemnitor, Principal or other entity and/or to take any action to protect any rights of Surety or to preserve or protect Surety's interests, or to avoid or lessen any alleged liability (hereinafter "Settlement"); and (b) modify, consent to or decline to consent to modification of any Bond and/or Bonded Contract, and/or to take, consent to or decline to consent to any assignment (hereinafter "Modification"). Any Settlement and/or Modification by Surety shall be final, binding and conclusive upon Indemnitors. Indemnitors shall remain bound under this Agreement for all Loss even though any such Settlement or Modification by Surety does or might substantially increase the liability of Indemnitors.

4. **PLACE IN FUNDS:** Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss. Any remaining funds held by Surety after payment of all sums due to

Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

5. **PLEDGE AND ASSIGNMENT OF COLLATERAL**: Indemnitors pledge, assign, transfer and set over to Surety the Collateral, as collateral to secure the obligations in this Agreement, whether incurred before or after the execution of this Agreement, including a license to use the Collateral, without cost, to perform or discharge Surety's obligations under any Bond or Bonded Contract. This pledge and assignment becomes effective on the date of this Agreement, or the earliest date allowable by law.

6. **TRUST FUNDS**: All sums due, to become due, or received by any Indemnitor or Principal for or on account of any Bonded Contract are trust funds in which Surety has an interest as a beneficiary of the trust whether in the possession of such Indemnitor or Principal or another. Such trust funds shall be held in trust for the benefit and payment of all obligations or Loss for which Surety may be liable under any Bond. Surety has the right, but not the obligation, to require that trust funds be placed in a dedicated trust fund account. This Agreement and declaration constitute notice of such trust.

7. **UNIFORM COMMERCIAL CODE**: This Agreement constitutes a security agreement to Surety in accordance with the Uniform Commercial Code or similar statute in any jurisdiction. Surety may file a photocopy or other reproduction of this Agreement as a financing statement or otherwise take any action or file any statement or documents to perfect the rights and interests granted in the Collateral or trust funds at any time.

8. **TAKEOVER**: If an Event of Default occurs, Surety shall have the right, in its sole discretion, and is authorized to take possession of any part or all of the work, materials and equipment under any Bonded Contract and any other materials or equipment which Surety deems necessary or proper to perform such Bonded Contract, and to perform or arrange for the performance of such Bonded Contract.

9. **ADVANCES AND FINANCING**: Surety is authorized to guarantee loans, to advance or lend money to any entity which Surety may see fit for the purpose of facilitating performance of obligations under any Bond or Bonded Contract. Indemnitors shall indemnify Surety for all such loans or advances and all Loss incurred by Surety relating to such loans and advances. Any failure to use the loans or advances, in whole or in part, for performance of obligations under such Bonds or Bonded Contracts shall not be a defense to Indemnitors' duty to indemnify Surety for such loans or advances. Surety has no obligation to provide financing or other support to any Principal or Indemnitor.

10. **BONDS FOR OTHER ENTITIES**: Indemnitors' obligations under this Agreement shall also apply to any Bond Surety issues for or on behalf of any Related Entity. "Related Entity" means: (a) any present or future, directly or indirectly owned subsidiary or affiliate of any Indemnitor; (b) any legal entity in which any Indemnitor has or acquires an ownership interest; and (c) any joint ventures, consortiums, teaming arrangements or any other business collaboration or economic enterprise ("Joint Venture") in which any Indemnitor is or was a member at the time the Bond was issued. Indemnitors' obligations under this Agreement shall also apply to any Bond Surety issues for or on behalf of any entity other than a Related Entity, on the written request of Anura-Emerick JV, LLC.

11. **FINANCIAL STATEMENTS, BOOKS AND RECORDS**: Indemnitors shall promptly provide Surety with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate or Related Entity of any Indemnitor, as requested by Surety. Indemnitors shall furnish on demand, and Surety shall have the right to access, examine and copy the books, records and accounts of Indemnitors and of any entity under the control of any Indemnitor, at no cost to Surety. Indemnitors authorize any entity in which funds of any Indemnitor may be deposited to furnish to Surety a statement of the amount of such deposits as of the date requested. Indemnitors authorize any and all lenders, obligees, subcontractors, suppliers, accountants, other insurers, and other persons or entities to furnish to Surety any information requested by Surety, including but not limited to the performance of obligations under any Bond or Bonded Contract and payments related to any such Bond or Bonded Contract.

12. **ISSUANCE OF BONDS**: Surety does not guarantee the issuance or compliance of any Bond or any obligee's acceptance of any Bond issued. Surety has an absolute right to decline to issue or continue or renew any Bond and to cancel any Bond. If Surety issues a bid or proposal Bond or a written commitment to issue any Bond (each a "Bond Commitment"), Surety has an absolute right to decline to issue any Bond that may be required in connection with any award made under the proposal for which the Bond Commitment was given.

13. **WAIVER OF NOTICE**: Indemnitors waive notice of the issuance or cancellation of any Bond, any Settlement or Modification, and any act, fact or information concerning or affecting the rights and liabilities of Surety or the rights or liabilities of Indemnitors under the Bonds or this Agreement, notwithstanding any notice of any kind to which Principal and/or Indemnitors might otherwise have been or be entitled, and notwithstanding any defenses they might have been or be entitled to assert.

14. **OTHER SURETIES AS BENEFICIARIES**: If Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and/or reinsuring sureties, including the right to bring an action for enforcement of this Agreement. Surety may furnish copies of any and all underwriting and Claim documentation to reinsurers and co-sureties, including statements, agreements, financial statements, and any information which Surety now has or may obtain in the future concerning (a) Principals and/or Indemnitors, (b) Related Entities of Principals and/or Indemnitors, and (c) other entities for which any Bond is requested pursuant to paragraph 10.

15. **SURETY'S ADDITIONAL RIGHTS**: This Agreement is in addition to and not in lieu of all other agreements of indemnity and any and all rights, powers, and remedies that Surety may have or acquire against Indemnitors or any other person or entity, whether by agreement, law or otherwise. Indemnitors acknowledge and agree that other indemnity, collateral, property and/or security may be required by Surety with respect to Bonds issued under this Agreement. Indemnitors shall remain bound under the terms of this Agreement even though Surety may from time to time (before or after the date of this Agreement): (a) accept, modify or release other agreements of indemnity with respect to any Bond; (b) accept, modify the indemnity of, or release any Indemnitor or any other person or entity; or (c) accept, release or subordinate any rights to collateral, real property, personal property or security. Indemnitors' obligations to Surety shall not be waived or reduced by any claim, setoff, defense, or other right or cause of action which Indemnitors and/or Surety may hold against any person or entity or which may be asserted by any Principal, Indemnitor or any other person or entity arising from or related to any Bonded Contract, any Bond, this Agreement, other agreements, by law or otherwise. Surety is subrogated to all rights, Claims, funds and receivables related to any Bonded Contract. Surety has the right to offset Loss on any Bonded Contract against proceeds, funds, real property or personal property under any other Bonded Contract or otherwise available to Surety under this Agreement. Surety's forbearance or failure to act to enforce any right shall not waive or diminish any of its rights, which rights may be enforced at any time in Surety's sole discretion.

16. **SURETY'S RIGHT TO SPECIFIC PERFORMANCE:** Indemnitors acknowledge that the failure of Indemnitors, collectively or individually, to perform or comply with any provision of this Agreement shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief and/or specific performance, and Indemnitors waive any claims or defenses to the contrary.

17. **POWER OF ATTORNEY**: Indemnitors irrevocably nominate, constitute, appoint and designate Surety, and any persons designated by Surety, as their attorney-in-fact, with the right, but not the obligation, to exercise all of the rights of Indemnitors pledged, assigned, transferred and set over to Surety in this Agreement, including, in the name of Indemnitors to make, execute, and deliver any and all assignments or documents deemed necessary and proper by Surety in order to exercise its rights, powers and remedies under this Agreement. Indemnitors ratify and confirm all acts taken by Surety and its designees as such attorney-in-fact and agree to protect and hold harmless Surety and its designees for all such acts.

18. **JOINT AND SEVERAL LIABILITY**: Indemnitors are jointly and severally liable to Surety under this Agreement. Surety may enforce this Agreement against any Indemnitor without joining any other Indemnitor, person or entity.

19. **CONTRIBUTION:** Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution against each other and/or any Principal until all obligations to Surety under this Agreement, at law or in equity, have been satisfied in full.

20. **NOTICE TO SURETY:** Indemnitors shall notify Surety as soon as any Indemnitor becomes aware of the happening of any Event of Default. This notice, and any other notice to Surety, shall be addressed as follows: **Zurich Surety, Red Brook Corporate Center, 600 Red Brook Blvd., 4th Floor, Owings Mills, Maryland 21117, Attention: Vice President, Contract Surety.**

21. **LAWSUITS AND JURISDICTION**: Separate lawsuits may be brought under this Agreement as causes of action accrue, and the bringing of any lawsuit or the recovery of any judgment on any cause of action shall not prejudice or bar the bringing of other lawsuits, on the same or other causes of action, whether arising before or after any other lawsuit or cause of action. In any legal proceeding brought by or against Surety that in any way relates to this Agreement, each Indemnitor irrevocably and unconditionally submits to the jurisdiction, at Surety's sole option, of the Federal, state and local courts in which (a) any Indemnitor resides or has property, (b) any bonded obligation arises or is performed in whole or in part, or (c) any action may be brought against Surety. Indemnitors submit to the jurisdiction of such courts and waive and agree not to assert that they are not subject to the jurisdiction of any such court or that the jurisdiction and/or venue is in an inconvenient forum or otherwise improper.

22. **GOVERNING LAW FOR BONDED CONTRACTS OUTSIDE THE UNITED STATES:** Indemnitors agree that as to any legal action or proceeding related to any Bond issued in connection with any Bonded Contract to be performed outside the United States and its territories, this Agreement shall be governed by and interpreted under the laws of the State of New

York, without regard to principles of conflicts of laws.

23. **EXECUTION AND CHANGES**: This Agreement may be executed in counterparts, all of which taken together shall constitute the Agreement. This Agreement shall be effective and immediately binding as to each Indemnitor when that Indemnitor executes this Agreement, regardless of whether any other party has executed the Agreement or fails to execute this Agreement. This Agreement shall only be changed or modified in writing.

24. **SEVERABILITY**: If any provision of this Agreement is found to be void or unenforceable as to an Indemnitor, the remainder of this Agreement shall nevertheless remain enforceable as to that Indemnitor; and the entire Agreement shall remain enforceable as to all other Indemnitors.

25. **TERMINATION**: Indemnitors' obligations and Surety's rights and remedies under this Agreement are continuing. Indemnitors acknowledge that their obligations under this Agreement remain for Bonds executed for entities that may be sold, dissolved, or otherwise disposed of in the future. This Agreement remains in effect until terminated and released by Surety. Any Indemnitor may terminate their participation in this Agreement with respect to future Bonds by sending written notice of termination to Surety at the address in Paragraph 20. Such termination shall be effective twenty (20) days from Surety's receipt of the notice ("Effective Date") and shall be effective only as to the Indemnitor providing such written notice. The notice of termination shall not terminate, modify, bar or discharge such notifying Indemnitor's obligations to Surety under this Agreement for: (a) Bonds issued prior to the Effective Date; (b) Bonds issued after the Effective Date where such Bonds are issued with respect to a Bond Commitment issued prior to the Effective Date; and (c) any Collateral or interest provided under this Agreement. The execution of any subsequent agreements of indemnity in favor of Surety by any Indemnitor shall not be construed as a novation, and this Agreement may only be terminated as provided herein.

26. **JURY WAIVER**: Indemnitors hereby knowingly and voluntarily waive and covenant that they will not assert any right to trial by jury in respect to any legal proceeding arising out of this Agreement.

27. **REPRESENTATIONS AND WARRANTIES**: Indemnitors each represent and warrant the following: (a) Each Indemnitor has a substantial, material, and/or beneficial interest in one or more Indemnitors or Principals obtaining Bonds or in Surety refraining from canceling any such Bond; (b) Each Indemnitor has the full power and authority to execute and deliver this Agreement and to perform all obligations in this Agreement; (c) All information provided to Surety by each Indemnitor prior to and after the execution of this Agreement is true, accurate and complete as of the time provided; and (d) Each right, power and remedy given to Surety, under any provision of this Agreement or otherwise, forms a material part of Surety's consideration for Bonds.

28. **WAIVER OF EXEMPTIONS**: Indemnitors waive all rights to claim any of their property, including their respective homesteads, as exempt from any levy, execution, sale or other legal process by Surety, unless such waiver is prohibited by law.

29. Intentionally Omitted.

30. **DEFINITIONS**:

**Bonded Contract** means any contract or other obligation referred to in any Bond or secured by any Bond.

**Change in Control** means any Principal or Indemnitor, without Surety's prior written consent: (a) assigning or selling any Bonded Contract; (b) undergoing a change in the beneficial ownership, directly or indirectly, of thirty percent (30%) or more of its voting stock (measured by voting power rather than number of shares) in one or more transactions, or any change in stock that results in a change of majority ownership; or (c) ceasing or threatening to cease to carry on business, or having any resolution passed or order made for its winding-up, liquidation or dissolution.

**Claim** or **Claims** means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond, any Bonded Contract, or this Agreement.

**Collateral** means all right, title and interest of one or more Indemnitors in the following, wherever located, and whenever acquired or arising: (a) all Bonded Contracts; (b) all goods (including equipment, machinery, tools and materials), general intangibles, and inventory, to the extent not subject to a prior perfected security interest; (c) all subcontracts and purchase orders arising under any Bonded Contract, and all surety bonds supporting such subcontracts and purchase orders; (d) all sums which are or may become payable in connection with any Bonded Contract and all other contracts in which any Indemnitor has an interest; (e) all intellectual property (including proprietary software) necessary or required to perform any

Bonded Contract; (f) any facilities or plants necessary or required to perform any Bonded Contract; and (g) any real or personal property, the improvement of which is secured by any Bond.

**Event of Default** means any one or more of the following: (a) failure to timely perform or comply with any Bonded Contract or failure to timely pay invoices, bills or other indebtedness or to discharge liabilities under any Bonded Contract or Bond; (b) Breach of any Bond or declaration of default under any Bonded Contract (whether admitted or contested); (c) Surety setting any reserve against Loss or incurring Loss; (d) breach of or failure to timely comply with this Agreement; (e) any Principal or Indemnitor becoming the subject of any bankruptcy, insolvency, receivership, creditor assignment or trusteeship (whether voluntary or involuntary and whether insolvent or not); (f) any occurrence which deprives or impairs any Principal, Indemnitor and/or Surety of the use of any Collateral; (g) any individual Indemnitor becoming legally incompetent, imprisoned, convicted of a felony, or disappearing and being unable to be located; (h) a Change in Control; (i) any default, however described, which occurs under any document relating to the financial indebtedness of any Principal or Indemnitor, or any event as a result of which that financial indebtedness is or becomes capable of being rendered prematurely due and payable; or (j) any representation by any Principal or Indemnitor to Surety which was materially false or misleading when made.

**Good Faith** means, with respect to any act, exercise of discretion or omission by Surety, an absence of dishonesty, evil intent and actual malice toward Principal and Indemnitors.

**Loss** means all premiums due to Surety and any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees (including those of Surety), consultant fees, and all other costs and expenses, including but not limited to any additional or extra-contractual damages arising from Surety's Settlement of any Claim. Pre-judgment and post-judgment interest shall accrue from the date of any payment made by Surety with respect to any of the foregoing at the maximum default rate permitted by law.

**Principal** means any person or entity whose obligation is guaranteed by a Bond.

**SIGNATURE PAGE(S) TO FOLLOW**

*(The remainder of this page is intentionally left blank)*

## SIGNATURE INSTRUCTIONS

**All signatures should be notarized and dated.**
1. Corporation: an officer on the operational side (i.e. President, CEO, COO) and an officer on the finance side (i.e. Secretary, CFO, Treasurer) should sign;
2. Limited Liability Company (LLC): (a) if manager-managed, and if only one manager, the manager should sign; if more than one manager, two managers should sign (b) if member-managed, all members should sign unless there is only one member, then the one member should sign, or (c) if the LLC has appointed officers to manage the LLC, an officer on the operational side and an officer on the finance side should sign.
3. Limited Partnership (LP): (a) if only one general partner, the general partner should sign; (b) if more than one general partner, two general partners should sign.
4. Limited Liability Partnership (LLP): at least two partners should sign.
5. Trust: All of the Trustee(s) should sign.

*By signing below, each Indemnitor affirms to Surety that they have read this General Indemnity Agreement carefully and understand their obligations as an Indemnitor. If the Indemnitor is a business entity, each signer executing this Agreement on behalf of such Indemnitor represents and warrants that he, she or it holds the office or position shown and that he, she or it is duly authorized by Indemnitor to execute this Agreement on behalf of Indemnitor and to bind Indemnitor to all of the terms and conditions of this Agreement.*

**INDEMNITOR:** *(2 signature format)*
**Anura-Emerick JV, LLC**
27501 SW 95th Ave Ste 970 Wilsonville, OR 97070

By: _[signature]_
Joseph M. McMahon
As Managing Member of Anura-Emerick JV, LLC

Date: APRIL 27, 20___

By: _[signature]_
Corey M. Lohman
As Member of Anura-Emerick JV, LLC

Date: April 27, 20 22

*(SEAL, if a Corporation)*

LAST 4 DIGITS OF TIN:

8744

### NOTARIAL ACKNOWLEDGEMENT

STATE OF: Oregon    COUNTY OF: Washington

The following instrument was acknowledged before me this 27 day of April, 20 22 by:

Joseph M. McMahon as Managing Member of Anura-Emerick JV, LLC, ("Entity"), on behalf of the Entity. He is personally known to me or has produced [form of identification] ODL E1837648 as identification.

and by

Corey M. Lohman as Member of the Entity on behalf of the Entity. He is personally known to me or has produced [form of identification] ODL 5412199 as identification.

My commission expires: 1/12/25

_[signature]_  4/27
Notary Public Signature   20 22

Printed Name: Stormi Denice Combs

OFFICIAL STAMP
STORMI DENICE COMBS
NOTARY PUBLIC - OREGON
COMMISSION NO. 1007668
MY COMMISSION EXPIRES JANUARY 12, 2025

*(The remainder of this page is intentionally left blank)*

CONTRACT GIA (C345-v8/21)    Page 6 of 9

Exhibit A -6 of 9

**INDEMNITOR:**  *(1 signature format)*
**Emerick Construction, Inc**
7855 SW Mohawk Street, Tualatin, OR, 97062

LAST 4 DIGITS OF TIN:

By: _____
Corey M. Lohman
As President of Emerick Construction, Inc.

1960

Date: __April 27__, 20__22__

| NOTARIAL ACKNOWLEDGEMENT |
| --- |
| STATE OF: __Oregon__   COUNTY OF: __Washington__ |
| The following instrument was acknowledged before me this __27__ day of __April__, 20__22__ by: Corey M. Lohman as President of Emerick Construction, Inc., ("Entity"), on behalf of the Entity. He is personally known to me or has produced [*form of identification*] __ODL 5412199__ as identification. |
| My commission expires: __1/12/25__  Notary Public Signature: _____  April 27, 20__22__  Printed Name: __Stormi Denice Combs__ |
| OFFICIAL STAMP  STORMI DENICE COMBS  NOTARY PUBLIC - OREGON  COMMISSION NO. 1007868  MY COMMISSION EXPIRES JANUARY 12, 2025 |

*(The remainder of this page is intentionally left blank)*

**[SIGNATURE PAGE FOR INDIVIDUAL (PERSONAL) INDEMNITORS]**

| SIGNATURE INSTRUCTIONS | Each Indemnitor should sign and date their signature and provide all of the required information. |
|---|---|
| | **Each signature should be witnessed and notarized.** |

I/we have read this General Indemnity Agreement carefully. There are no separate agreements or understandings, either written or oral, that in any way lessen or change my/our obligations as set forth in this Agreement. In testimony hereof I/we have signed this Agreement on the day and year written below.

WITNESS:

*[Witness Signature]*
Witness Signature
Print Name: ARTHUR D BEYER
Date: APRIL 27, 2022

**INDEMNITOR: Joseph M. McMahon**
27501 SW 95th Ave Ste 970, Wilsonville, OR 97070

*[Indemnitor Signature]*
Joseph M. McMahon
Date: APRIL, 2022

Last four digits of Indemnitor's Social Security Number:

1947

**NOTARIAL ACKNOWLEDGEMENT**
STATE OF: Oregon          COUNTY OF: Washington

The following instrument was acknowledged before me this 27 day of April, 2022 by: Joseph M. McMahon. He is personally known to me or has produced [form of identification] CADL E1837648 as identification.

My commission expires: 1/12/25

*[Notary Public Signature]*
Notary Public Signature
April 27, 2022

OFFICIAL STAMP
STORMI DENICE COMBS
NOTARY PUBLIC - OREGON
COMMISSION NO. 1007668
MY COMMISSION EXPIRES JANUARY 12, 2025

Printed Name: Stormi Denice Combs

WITNESS:

*[Witness Signature]*
Witness Signature
Print Name: ARTHUR D BEYER
Date: APRIL 27, 2022

**INDEMNITOR: Corey M. Lohman**
1409 S Maple Street, Canby, OR 97013

*[Indemnitor Signature]*
Indemnitor Signature
Date: APRIL 27, 2022

Last four digits of Indemnitor's Social Security Number:

7116

**NOTARIAL ACKNOWLEDGEMENT**
STATE OF: Oregon          COUNTY OF: Washington

The following instrument was acknowledged before me this 27 day of April, 2022 by: Corey M. Lohman. He is personally known to me or has produced [form of identification] ODL 5472199 as identification.

My commission expires: 1/12/25

*[Notary Public Signature]*
Notary Public Signature
April 27, 2025

OFFICIAL STAMP
STORMI DENICE COMBS
NOTARY PUBLIC - OREGON
COMMISSION NO. 1007668
MY COMMISSION EXPIRES JANUARY 12, 2025

Printed Name: Stormi Denice Combs

*(The remainder of this page intentionally left blank)*

| WITNESS: | INDEMNITOR: Stacy J. Lohman<br>1409 S Maple Street, Canby, OR 97013 | Last four digits of Indemnitor's Social Security Number: |
|---|---|---|
| *[signature]*<br>Witness Signature<br>Print Name: ARTHUR D BEYE2<br>Date: APRIL 27, 2022 | *[signature]*<br>Indemnitor Signature<br>Date: April 27, 2022 | 5085 |

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: Oregon    COUNTY OF: Washington

The following instrument was acknowledged before me this 27 day of April, 2022 by:

Stacy J. Lohman. She is personally known to me or has produced [form of identification] ODL 5593417 as identification.

My commission expires: 1/12/25

*[signature]*
Notary Public Signature
April 27, 2022

Printed Name: Stormi Denice Combs

**OFFICIAL STAMP**
**STORMI DENICE COMBS**
NOTARY PUBLIC - OREGON
COMMISSION NO. 1007668
MY COMMISSION EXPIRES JANUARY 12, 2025

*(The remainder of this page intentionally left blank)*