**Paul K. Friedrich, OSB #171695**                    The Honorable Karin J. Immergut
paulf@fdlawpllc.com
Friedrich & Dishaw, PLLC
92 Lenora Street, #119
Seattle, WA 98121
Tel: 206-360-7655
Attorneys for Plaintiffs
Zurich American Insurance Company
Fidelity and Deposit Company of Maryland

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ZURICH AMERICAN INSURANCE COMPANY, a foreign corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a foreign corporation**<br><br>                    Plaintiffs,<br><br>        v.<br><br>**EMERICK CONSTRUCTION, INC., aka EMERICK CONSTRUCTION COMPANY, an Oregon corporation; EMERICK RESIDENTIAL BUILDERS, LLC, an Oregon limited liability company; LAWRENCE SITZ, an individual; BARBARA SITZ, an individual; COREY LOHMAN, an individual; STACY LOHMAN, an individual**<br><br>                    Defendants. | Case No.  3:25-cv-00166-IM<br><br>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS LAWRENCE AND BARBARA SITZ<br><br>REQUEST FOR ORAL ARGUMENT |

**TABLE OF CONTENTS**

**MOTION** ......................................................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** .............................. 1

**I. Introduction** .............................................................................................. 1

**II. Statement of Facts** ................................................................................. 3

   **A.   The 2018 GAI** ................................................................................. 3

     1.   The Sitzes have an Unambiguous Obligation to Indemnify Zurich ................... 3

     2.   The Sitzes have Unambiguous Collateral Security Obligations ......................... 4

     3.   The 2018 GAI States the Exclusive Method for Terminating Obligations ......... 6

   **B.   Zurich Executed Bonds at Emerick's Request** ...................................... 7

   **C.   Zurich has Sustained Liquidated and Unliquidated Losses** ................... 8

   **D.   The Sitzes Breached the 2018 GAI** ...................................................... 9

   **E.   The Sitzes Maintained a Financial Interest in Emerick and Did Not Take the Exclusive Action Available to Terminate Their Indemnity Obligations to Zurich** ............................................................................ 9

     1.   Lawrence Sitz Has Remained Actively and Substantially Involved in Emerick ........................................................................................................ 9

     2.   The Sitzes Never Terminated Their Indemnity Obligations with Zurich .......... 11

   **F.   Procedural Posture** ............................................................................. 11

**III. Statement of Issues** ............................................................................. 13

**IV. Evidence Relied Upon** ......................................................................... 13

**V. Legal Authority and Argument** ........................................................... 14

   **A.   Summary Judgment Standard** ............................................................ 14

   **B.   The 2018 GAI is Enforceable Against the Sitzes** ................................ 15

    1.   Courts Routinely Enforce Indemnity Agreements in Favor of Sureties Because of the Vital Role They Play in the Construction Industry. .................. 15

    2.   The Indemnity Agreement is Binding Under Oregon Law ................................ 16

**C.   The Sitzes' Obligations Under the 2018 GAI Were Never Terminated** ........ 18

    1.   The Sitzes Never Complied with the Written Termination Requirements of the 2018 GAI ............................................................................................. 19

    2.   The 2022 GAI Did Not Supersede or Novate the 2018 GAI. ........................... 21

**VI. Conclusion** ............................................................................................................ 22

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

# TABLE OF AUTHORITIES

## Cases

*AMC, LLC v. Nw. Farm Food Coop.*,
  481 F. Supp. 3d 1153, 1161 (D. Or. 2020) ................................................... 14

*Capitol Indem. Corp. v. Aulakh*,
  313 F.3d 200, 203–04 (4th Cir. 2002) ......................................................... 15

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 323 (1986) ............................................................................. 14

*Cent. Or. Indep. Health Servs., Inc. v. State*,
  211 Or. App. 520, 528, 156 P.3d 97 (2007) ................................................ 17

*Commercial Ins. Co. of Newark, N.J. v. Pacific–Peru Constr. Co.*,
  558 F.2d 948, 953 (9th Cir. 1977) ............................................................... 20

*Cook v. S. Pac. Transp. Co.*,
  50 Or. App. 547, 551, 623 P.2d 1125 (1981) .............................................. 17

*Developers Sur. & Indem. Co. v. Barlow*,
  628 F. App'x 980, 984 (10th Cir. 2015) ...................................................... 20

*Developers Sur. & Indem. Co. v. Chrisellie Corp.*,
  497 F. Supp. 3d 9, 20 (W.D. Pa. 2020) ....................................................... 20

*Diaz v. Eagle Produce Ltd. P'ship*,
  521 F.3d 1201, 1207 (9th Cir. 2008) ........................................................... 14

*Fireman's Fund Ins. Co. v. Nizdil*,
  709 F. Supp. 975, 976–77 (D. Or. 1989) ..................................................... 18

*General Accident Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.*,
  975 F.Supp. 511, 516 (S.D.N.Y. 1997) ....................................................... 15

*Heine v. Bank of Oswego*,
  144 F. Supp. 3d 1198, 1209 (D. Or. 2015) .................................................. 16

*Inland Empire Dry Wall Supply Co. v. W. Sur. Co.*,
  197 Wn. App. 510, 537, 389 P.3d 717 (2017) ............................................. 16

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

*Knappenberger v. Cascade Ins. Co.*,
  259 Or. 392, 397, 487 P.2d 80 (1971) .......................................................... 17

*Masterclean, Inc. v. Star Ins. Co.*,
  347 S.C. 405, 414, 556 S.E.2d 371 (2001) .................................................. 15

*Quillin v. Peloquin*,
  237 Or. 343, 346, 391 P.2d 603 (1964) ........................................................ 17

*State ex rel. Dep't of Forestry v. PacifiCorp*,
  236 Or. App. 326, 333, 237 P.3d 861 (2010),
    *opinion adhered to as modified*, 237 Or. App. 228, 239 P.3d 503 (2010) ............... 17

*U.S. Fid. & Guar. Co. v. Feibus*,
  15 F. Supp. 2d 579, 588 (M.D. Pa. 1998) ............................................... 14, 15

*Union Oil Co. of Cal. v. Lull*,
  220 Or. 412, 425–26, 349 P.2d 243 (1960) .................................................. 17

*Valenti v. Hopkins*,
  324 Or. 324, 331, 926 P.2d 813 (1996) ........................................................ 17

## Statutes

ORS § 279C.380 *et seq* ............................................................................... 3

## Rules

Fed. R. Civ. P. 56(a) ................................................................................... 14

Fed. R. Civ. P. 56(e) ................................................................................... 14

## Treatises

Managing and Litigating the Complex Surety Case, ABA (1998) ................................. 16

Trecker & Ott, The Agreement of Indemnity, ABA (1989) ........................................ 16

Page v       Plaintiffs' Motion for Summary Judgment
             Against Defendants Lawrence & Barbara Sitz

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

# Unpublished Cases

*Arch Ins. Co. v. FTR Int'l Inc.*, No.
   CV12-2544, 2013 WL 11328454, at *4 (C.D. Cal. Mar. 15, 2013)............................ 20

*Auto-Owners Ins. Co. v. Classic Carpet & Tile, Inc.*,
   No. 08-10020, 2009 WL 350750, at *3 (S.D. Fla. Feb. 12, 2009)............................. 20

*Guarantee Co. of N. Am. USA v. SBN Enters., Inc.*,
   No. 09-5399, 2011 WL 3205318, at *2, *5 (D.N.J. July 27, 2011) ........................... 14

*Merchants Bonding Co. v. Burnside*,
   No. 4:22-CV-3651, 2023 WL 4140455, at *3 (S.D. Tex. June 21, 2023) ................. 22

*Pekkola v. Fid. Nat'l Title Ins. Co.*,
   No. 6:12-CV-02147-PA, 2013 WL 3873233, at *4 (D. Or. July 25, 2013)............... 21

*Philadelphia Indem. Ins. Co. v. Reytech Servs., L.L.C.*,
   No. 20-11274, 2021 WL 4142390, at *3 (5th Cir. Sept. 10, 2021)............................ 21

*Safeco Ins. Co. v. DeMatos Enters., Inc.*,
   2003 WL 21293825, at *5 (E.D. Pa. May 16, 2003).................................................... 14

*Travelers Cas. & Sur. Co. of Am. v. Jadum Constr., Inc.*,
   2003 WL 21653368 (D. Mass. July 11, 2003) ...................................................... 14–15

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

## MOTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and LR 7-1, Plaintiffs Zurich American Insurance Company and Fidelity and Deposit Company of Maryland (collectively, "Zurich") respectfully move for summary judgment against Defendants Lawrence Sitz and Barbara Sitz (together the "Sitzes"). In compliance with LR 7-1, the undersigned certifies that counsel for Zurich and counsel for the Sitzes made a good faith effort through telephone conference to resolve this dispute and have been unable to do so.

This motion is supported by the accompanying memorandum of points and authorities, the Joint Statement of Agreed Material Facts, the Declaration of James Hamel and the exhibits attached thereto, the Declaration of Joshua Schumacher, the Declaration of Paul K. Friedrich and the exhibits attached thereto, and the records on file in this case. For the reasons set forth below, there is no genuine dispute of material fact, and summary judgment should be granted in Zurich's favor.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This dispute turns on an incontrovertible and inconvenient truth for the Sitzes: they never took the single, simple action *required* to terminate the contractual obligations they assumed in 2018 by signing a General Agreement of Indemnity in favor of Zurich (the "2018 GAI"). The 2018 GAI obligates each Defendant to take certain actions if demanded by Zurich; in exchange, Zurich agreed to execute construction surety bonds for Emerick Construction, Inc., also known as Emerick Construction Company ("Emerick"). Each Defendant also agreed that there is only one method for terminating these obligations: *sending a request to Zurich in writing.*

Plaintiffs' Motion for Summary Judgment
         Against Defendants Lawrence & Barbara Sitz

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

The Sitzes have suggested discovery is nevertheless necessary to determine if they owe any obligations to Zurich because Mr. Sitz "transition[ed] out" of Emerick in 2020. The Sitzes offer no explanation for how any facts surrounding this event could displace application of the 2018 GAI's unambiguous provision that the exclusive method for terminating liability is by providing Zurich with written notice. Nor do they explain how any facts revealed in discovery would alter the Court's application of the 2018 GAI's unambiguous terms, which expressly disclaim that the execution of any subsequent indemnity agreement would effect a novation.

Meanwhile, contrary to the Sitzes' suggestion that Mr. Sitz became a disinterested retiree in 2020, Mr. Sitz executed five agreements on January 1 of that year that ensured he remained deeply embedded in Emerick's management, operations, and strategic decision-making for years to come. Under those agreements, Emerick agreed to pay Mr. Sitz up to $426,500 annually. Mr. Sitz's continuing roles at Emerick included: (1) "Estimator Extraordinaire," (2) paid consultant, (3) member of Emerick's Board of Directors with voting rights, and (4) stockholder.

Zurich has received no payments from the Sitzes in response to its demands that they fulfill their obligations under the 2018 GAI. During that same period, Zurich incurred losses exceeding $23 million as a direct result of issuing bonds at Emerick's request. The Sitzes offer two purported defenses for their failure to honor their obligations under the 2018 GAI: (1) that they were orally released from the 2018 GAI, and (2) that a later General Agreement of Indemnity executed in 2022 (the "2022 GAI") extinguished their obligations under the 2018 GAI. Neither defense has merit, factually or legally.

This is a straightforward contractual dispute. The undisputed facts establish that the Sitzes owe Zurich the obligations they unambiguously accepted by executing the 2018 GAI. The 2018 GAI provides a single mechanism for terminating indemnity obligations—written notice to

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

Zurich—and the Sitzes did not invoke it. That requirement ensures clarity and avoids precisely the type of post hoc "he-said-she-said" oral dispute the Sitzes now attempt to raise. Because the Sitzes never complied with the termination provision, their indemnity obligations remain in full force and effect. Summary judgment should therefore be entered in Zurich's favor and against Lawrence and Barbara Sitz in the amount of $23,506,646.25.

## II.  STATEMENT OF FACTS

**A.    The 2018 GAI**

Zurich is in the business of issuing surety bonds for construction projects, including payment, performance, and retainage bonds pursuant to ORS § 279C.380 *et seq*. ECF No. 1 ¶ 11. To induce Zurich to issue bonds on behalf of Emerick, the Sitzes executed the 2018 GAI. *Id.* ¶ 12; ECF No. 1-1, Ex. A; Joint Statement of Agreed Material Facts ¶ 1.

As consideration for Zurich's issuance of bonds, the Sitzes agreed—jointly and severally—to bind themselves to a series of express obligations designed to protect Zurich from loss. Chief among those obligations were the duties to (1) indemnify Zurich for any losses, costs, or liabilities arising out of the bonds, and (2) post collateral security upon demand.

1.    The Sitzes have an Unambiguous Obligation to Indemnify Zurich

The indemnity obligation is set forth in Paragraph 2 of the 2018 GAI, which states in clear and mandatory terms:

> Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability.

ECF No. 1-1, Ex. A ¶ 2.

Plaintiffs' Motion for Summary Judgment
Against Defendants Lawrence & Barbara Sitz

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

The term "Loss" is defined broadly in Paragraph 30 to include not only liability payments but also legal fees, expenses, and other associated costs:

> **Loss** means all premiums due to Surety and any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees (including those of Surety), consulting fees, and all other costs and expenses, including but not limited to any additional or extra-contractual damages arising from Surety's Settlement of any Claim. Pre-judgment and post-judgment interest shall accrue from the date of any payment made by Surety with respect to any of the foregoing at the maximum default rate permitted by law.

*Id.* ¶ 30.

The 2018 GAI further establishes a burden-shifting evidentiary framework: an itemized statement of loss, sworn to by an officer of Zurich, constitutes *prima facie* evidence of the fact, amount, and extent of liability. *Id.* ¶ 2.

Finally, Paragraph 2 makes clear that the Sitzes' payment obligation arises upon demand—regardless of whether Zurich has actually made any claim payments—stating:

> Indemnitors shall promptly… make payment to Surety as soon as liability or Loss exists, whether or not Surety has made any payment.

*Id.*

Together, these provisions establish that, upon demand, the Sitzes were contractually obligated to indemnify Zurich for any liability or Loss arising from the bonds issued on behalf of Emerick. Zurich's right to indemnity is triggered by the existence of liability or Loss—not by the actual payment of claims—and is supported by a straightforward evidentiary mechanism requiring only a sworn, itemized statement of Loss.

## 2.   The Sitzes have Unambiguous Collateral Security Obligations

In addition to their indemnity obligations, the 2018 GAI also imposes a separate and independent duty on the Sitzes to provide collateral security to Zurich upon written demand. This

Page 4     Plaintiffs' Motion for Summary Judgment
           Against Defendants Lawrence & Barbara Sitz

collateral obligation serves to protect Zurich from exposure to Loss before it occurs and is enforceable even in the absence of actual payment.

Paragraph 4 of the 2018 GAI grants Zurich broad discretion to determine the amount of collateral required and allows Zurich to use the funds to pay actual losses or hold them as protection against potential future exposure. It provides:

> Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by the Surety to pay Loss or may be held by Surety as collateral against potential future Loss.

*Id*. ¶ 4. This obligation arises immediately upon Zurich's written demand and is not contingent on the resolution of any underlying claim or dispute.

Paragraph 5 reinforces this obligation by confirming that the Sitzes pledged all collateral to Zurich to secure their obligations under the 2018 GAI, including both pre- and post-execution liabilities:

> Indemnitors pledge, assign, transfer and set over to Surety the Collateral, as collateral to secure the obligations in this Agreement, whether incurred before or after the execution of this Agreement, including a license to use the Collateral, without cost, to perform or discharge Surety's obligations under any Bond or Bonded Contract.

*Id.* ¶ 5.

Paragraph 16 further emphasizes the enforceability of this obligation, recognizing that any failure to comply with the 2018 GAI—including failure to post collateral—constitutes irreparable harm to Zurich and entitles it to equitable relief:

> Indemnitors acknowledge that the failure of Indemnitors, collectively or individually, to perform or comply with any provision of this Agreement shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief and/or specific performance, and Indemnitors waive any claims or defenses to the contrary.

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

*Id.* ¶ 16.

These provisions establish Zurich's unequivocal right to specific performance of the collateral security obligation. The Sitzes' failure to comply with Zurich's demand constitutes a material breach and entitles Zurich to monetary and equitable relief under the 2018 GAI.

### 3.    The 2018 GAI States the Exclusive Method for Terminating Obligations

The 2018 GAI establishes that each indemnitor's obligations are continuing and may only be terminated through a specific, exclusive procedure. Paragraph 25 sets forth the method by which an indemnitor may terminate their future obligations:

> ***This Agreement remains in effect until terminated and released by Surety.*** Any Indemnitor may terminate their participation in this Agreement with respect to future Bonds by sending written notice of termination to Surety at the address in Paragraph 20. Such termination shall be effective twenty (20) days from Surety's receipt of the notice ('Effective Date') and shall be effective only as to the Indemnitor providing such written notice.

*Id.* ¶ 25 (emphasis added).

This language provides the exclusive mechanism for terminating an indemnitor's participation in the 2018 GAI. Termination must be in writing and sent to Zurich at the address specified in Paragraph 20. *Id.* It becomes effective only after Zurich receives the notice and twenty days have elapsed. *Id.* Moreover, it is effective only as to the indemnitor who provides the written notice, and only with respect to future bonds. *Id.* The indemnitor remains bound for all obligations arising from bonds issued prior to the effective date of termination. *Id.*

Paragraph 25 also contains an express provision clarifying that the execution of subsequent indemnity agreements does not supersede or extinguish the 2018 GAI:

> The execution of any subsequent agreements of indemnity in favor of Surety by any Indemnitor shall not be construed as a novation, and ***this Agreement may only be terminated as provided herein***.

Page 6      Plaintiffs' Motion for Summary Judgment
Against Defendants Lawrence & Barbara Sitz

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

*Id.* (emphasis added).

This provision eliminates any ambiguity regarding the effect of later agreements. The execution of subsequent indemnity agreements has no legal effect on prior indemnity agreements. Any prior indemnity agreement, and the indemnitors' obligations thereunder, remains fully enforceable unless it is properly terminated in strict compliance with the written notice procedure. As a result, the 2018 GAI continues to bind each indemnitor until Zurich receives and processes a compliant written termination notice.

## B.    Zurich Executed Bonds at Emerick's Request

In consideration of the promises set forth in the 2018 GAI, Zurich issued a total of $509,744,557.98 in payment, performance, and retainage bonds for construction projects (the "Bonds") on behalf of Emerick, as principal, and various public entities, as obligees, in connection with certain public works construction projects ("Projects"), primarily in the State of Oregon.  Currently, the open Bonds include, but are not limited to, the following:

| Principal Name | Job Description | Primary Obligee | Bond | Bond Amount |
|---|---|---|---|---|
| Emerick | New Wilsonville Primary School 7151 Boeckman Road Wilsonville, OR 97062 | West Linn - Wilsonville School District 3J | PRF9401425 | $27,148,000 |
| Emerick | Small Works 2023 Centennial School District - Various Locations | Centennial School District | PRF9401428 | $8,929,837 |
| Emerick | Spirit Lake Elementary (SLE) Athol Elementary (ATHOL) Lakeland Middle School (LMS) | Lakeland Joint School District #272 | PRF9401424 | $909,182 |
| Emerick | Centennial High School Athletic Facility Improvements3505 SE 182nd Ave. Gresham, Oregon 97030 | Centennial School District | PRF9401422 | $2,658,561 |
| Emerick | Package 1 - Dallas High School & Morisson Campus | Dallas School District | PRF9401415 | $3,786,711 |
| Emerick | Package 2 - Lyle Elementary School Oakdale Elementary School Whitworth Elementary School  La Ceole Middle School | Dallas School District | PRF9401416 | $4,010,480 |

| Emerick | Main Station Replacement, Lebanon, OR 97355 | Lebanon Fire District | PRF9401409 | $14,276,149 |
|---------|---------|---------|---------|---------|
| Emerick | HFD Station 87 Dormitory Remodel Hubbard, OR | Hubbard Fire District | PRF9401419 | $220,350 |
| Emerick | City of Wilsonville Capital Improvement Project #8113, 28601 SW Boberg Rd., Wilsonville OR 97070 | City of Wilsonville Public Works Department | PRF9401412 | $19,700,000 |
| Emerick | Scio Middle School Gymnasium Seismic Rehabilitation Scio OR | Scio School District | PRF9401408 | $1,998,562 |
| Emerick | 19003.014 New Athey Creek Middle School at Dollar Street, 945 Dollar Street, West Linn, OR 97068 | West Linn - Wilsonville School District 3J | PRF9180545 | $61,547,000 |
| Emerick | Greater Albany Public School District 8J- New Transportation Facility | Greater Albany Public School District 8J | PRF9180538 | $11,798,733 |
| Emerick | Contract No. C6871, Clatsop County Jail Relocation | Clatsop County, Oregon | PRF9180517 | $23,748,114 |

ECF No. 1 ¶ 25; Declaration of James Hamel ("Hamel Decl."), ¶ 4.

## C.    Zurich has Sustained Liquidated and Unliquidated Losses

As a result of Emerick's actions and/or inactions on the Projects, Zurich has received payment, performance, and/or retainage bond claims against Zurich and the Bonds issued on behalf of Emerick. As of January 14, 2026, Zurich has issued payments on those claims and has incurred monetary losses totaling $22,674,481.03 ("Bond Losses"). Hamel Decl. ¶ 5, Ex. A.

In addition to those Bond Losses, Zurich has incurred additional monetary losses in the form of attorney fees, costs, consultant fees, and expenses ("Loss Adjustment Expenses") which are fully compensable under the 2018 GAI. ECF No. 1 ¶¶ 27–28; Hamel Decl. ¶ 6. As of January 14, 2026, Zurich has paid Loss Adjustment Expenses in the total amount of $832,165.22. Hamel Decl. ¶ 6, Ex. B. Therefore, as of January 14, 2026, Zurich has suffered monetary damages in the total amount of $23,506,646.25. Hamel Decl. ¶ 7.

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

**D.      The Sitzes Breached the 2018 GAI**

Prior to commencing litigation, Zurich made multiple attempts to mitigate its losses and resolve its exposure with all indemnitors, including the Sitzes. Specifically, by letters dated August 21, 2024, September 6, 2024, November 14, 2024, and January 3, 2025—and through related email correspondence—Zurich demanded that the indemnitors, including the Sitzes, jointly and severally comply with their obligations under the 2018 GAI. ECF No. 1 ¶¶ 30–33; *see also* ECF No. 1-1, Ex. C-F; Joint Statement of Agreed Material Facts ¶ 2.

Pursuant to the 2018 GAI, the Sitzes were required to "promptly, upon demand, make payment to [Zurich] as soon as liability or Loss exists[.]" ECF No. 1-1, Ex. A ¶ 2. They were similarly obligated to "promptly deposit with [Zurich], on demand, an amount of money that [Zurich] determines is sufficient to fund any liability or Loss." *Id.* ¶ 4.

These obligations are not contingent on payment by Zurich to third parties. Rather, the duty to indemnify and post collateral arises immediately upon Zurich's written demand. Despite receiving multiple written demands, the Sitzes have failed to perform either obligation. Hamel Decl. ¶ 8.

The Sitzes' failure to indemnify Zurich and to post collateral security upon demand constitutes a material breach of the express and unambiguous terms of the 2018 GAI.

**E.      The Sitzes Maintained a Financial Interest in Emerick and Did Not Take the Exclusive Action Available to Terminate Their Indemnity Obligations to Zurich**

1.      <u>Lawrence Sitz Has Remained Actively and Substantially Involved in Emerick</u>

In support of their motion to set aside default, Lawrence Sitz asserts that he "transition[ed] out" of Emerick in 2020 following a buyout of his ownership interest. ECF No. 35 ¶¶ 4–5. That

assertion omits critical, undisputed facts, including but not limited to his continuing minority ownership stake in the company.

When Mr. Sitz executed the Buyout Agreement, he also entered into multiple agreements that ensured his continued and substantial involvement in Emerick's business. *See* Declaration of Paul K. Friedrich ("Friedrich Decl."), at ¶¶ 3–8, Exs. A–F. On January 1, 2020, Mr. Sitz executed: (1) an Employment Agreement under which he served as "Estimator Extraordinaire," earning at least $200,000 annually and performing core operational functions including estimating projects, preparing bids, and maintaining relationships with the company's board and shareholders; *id.* Ex. A; (2) a Director Service and Voting Agreement pursuant to which he agreed to serve as a Director of Emerick for five years in exchange for $29,000 per year; *id*. Ex. B; (3) a Consulting Agreement requiring him to provide estimating, strategic planning, and marketing services for $5,000 per month; *id*. Ex. C; (4) a Guaranty Agreement under which he guaranteed certain Emerick obligations in exchange for an annual stipend of $137,500; *id*. Ex. D; and (5) a Stock Purchase and Option Agreement wherein he would sell 10,346 shares of Emerick to Corey Lohman, but continue to own 970.11 shares. *Id*. Exs. E–F. Collectively, these agreements obligated Emerick to pay Mr. Sitz at least $426,500 per year, along with an ownership stake in the company. *Id*. Exs. A–F.

Mr. Sitz's continuing role at Emerick is further confirmed by a December 23, 2025, declaration from Corey Lohman, an officer and part-owner of Emerick, who stated that Mr. Sitz is Emerick's Responsible Managing Individual. *Id*. Ex. G, ¶¶ 7 & 11. Public records from both the Oregon Construction Contractors Board and the Washington Secretary of State further reflect that, as of January 2026, Mr. Sitz was publicly identified as Emerick's Responsible Managing Individual and as a "Governor" of the company. Friedrich Decl. ¶¶ 10–11; Exs. H–I. These

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

contemporaneous records establish that Mr. Sitz had not become a disinterested third party in 2020, but instead remained actively involved in Emerick's management, operations, and corporate governance throughout the period giving rise to Zurich's losses.

        2.     <u>The Sitzes Never Terminated Their Indemnity Obligations with Zurich</u>

Zurich maintains centralized underwriting and indemnity records in the ordinary course of its business, including records of any written termination notices submitted by indemnitors. Declaration of Joshua Schumacher ("Schumacher Decl."), ¶ 3. It is Zurich's regular practice and procedure, upon receipt of a written notice of termination from an indemnitor, to send written acknowledgment confirming receipt of the notice and the effective date of termination. *Id.* ¶ 4. After conducting a diligent search of its underwriting and indemnity files, Zurich confirmed that it has never received written notice from Lawrence Sitz or Barbara Sitz purporting to terminate their obligations under the 2018 GAI. *Id.* ¶¶ 5-6. Zurich likewise does not possess any written acknowledgment of termination issued to either Lawrence or Barbara Sitz, further confirming that no written notice of termination was ever received. *Id.* ¶ 7. Zurich has also never issued any written release of the Sitzes from their indemnity obligations. *Id.* ¶ 8.

**F.    Procedural Posture**

Zurich initiated this action on January 30, 2025. ECF No. 1. The following day, Zurich moved for a preliminary injunction to compel compliance with the indemnity and collateral security provisions. ECF No. 4. When no Defendant appeared or responded, the Clerk entered default against all Defendants. ECF Nos. 18, 23, 26. Zurich then moved for entry of default judgment. ECF No. 27. At that point, Defendants Lawrence and Barbara Sitz appeared and moved to set aside the entry of default. ECF No. 33.

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

On June 16, 2025, the Court granted the Sitzes' motion to set aside default and simultaneously granted Zurich's motion for default judgment against the remaining Defendants. ECF No. 39; Joint Statement of Agreed Material Facts ¶ 3. The Court found that the Sitzes had not engaged in culpable conduct warranting default and had raised factual assertions which—if proven—might support an equitable defense. ECF No. 39 at 6 – 8. However, as demonstrated herein, no such facts exist, and the Sitzes' contractual obligations under the 2018 GAI are clear and enforceable as a matter of law.

Critically, the Court has already adjudicated the merits of Zurich's claims. This motion seeks entry of judgment against the Sitzes based on the same indemnity provisions that the Court previously upheld. The Court has expressly held that, under the 2018 GAI, Zurich possesses "the right to be indemnified by Defendants for any loss incurred for posting the bonds and for Defendants to provide collateral security." *Id*. at 10. The Court further found that the obligation to indemnify arose when claims were asserted against Zurich, and that the failure to indemnify and post collateral upon demand "substantially undermines the basis of the [2018] Indemnity Agreement and constitutes a material breach." *Id*. at 10–11. The Court concluded that Zurich's breach of contract claim was meritorious. *Id*. at 11.

The Court also approved Zurich's calculation of damages, finding that the amount sought "is the amount Defendants are contractually obligated to pay under the Indemnity Agreement and Rider." *Id*. at 13. The Court entered judgment against the other Defendants in the amount of $13,723,896.20, ordered them to post collateral in the amount of $8,421,993.80, and granted a permanent injunction prohibiting them from selling, transferring, or otherwise encumbering assets until the required collateral was posted. *Id*. at 11–12.

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

Accordingly, the enforceability of the indemnity, collateral security, and injunctive relief provisions of the 2018 GAI has already been established as to every indemnitor except the Sitzes. As set forth herein, the Sitzes' purported defenses fail as a matter of law, and summary judgment should now be entered against them consistent with the Court's prior rulings.

## III.  STATEMENT OF ISSUES

1.      Whether the 2018 GAI is enforceable against Defendants Lawrence and Barbara Sitz where: (1) Oregon law recognizes the enforceability of indemnity agreements; and (2) this Court has already upheld the enforceability of the same provisions against the other indemnitor Defendants.

2.      Whether the Sitzes' obligations under the 2018 GAI remain in full force and effect when they failed to follow the unambiguous and express termination procedures contained in Paragraph 25 of the 2018 GAI.

3.      Whether the Sitzes breached the 2018 GAI by failing to indemnify Zurich.

4.      Whether Zurich is entitled to summary judgment awarding monetary damages in the amount of $23,506,646.25 against the Sitzes based on their contractual obligation to indemnify Zurich under the 2018 GAI.

## IV.  EVIDENCE RELIED UPON

This Motion for Summary Judgment is supported by the Joint Statement of Agreed Material Facts; the Declaration of James Hamel with exhibits thereto; the Declaration of Joshua Schumacher, the Declaration of Paul K. Friedrich with exhibits thereto; and the records on file in this case.

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

## V.  LEGAL AUTHORITY AND ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the case under the governing substantive law. A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party based on the evidence presented. *AMC, LLC v. Nw. Farm Food Coop.*, 481 F. Supp. 3d 1153, 1161 (D. Or. 2020).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden is met, the nonmoving party must "go beyond the pleadings" and identify specific facts showing that a genuine issue remains for trial. *Id*. at 324; Fed. R. Civ. P. 56(e).

Summary judgment is inappropriate only where "reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

Courts routinely enforce indemnity agreements and grant summary judgment in favor of sureties. *See, e.g., Guarantee Co. of N. Am. USA v. SBN Enters., Inc.*, No. 09-5399, 2011 WL 3205318, at *2, *5 (D.N.J. July 27, 2011) (granting partial summary judgment and ordering indemnitors to reimburse the surety and post collateral); *U.S. Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998) (granting summary judgment, entering judgment against indemnitors, and compelling deposit of collateral), *aff'd*, 185 F.3d 864 (3d Cir. 1999); *Safeco Ins. Co. v. DeMatos Enters., Inc.*, 2003 WL 21293825, at *5 (E.D. Pa. May 16, 2003) (granting summary judgment on liability and ordering indemnitors to deposit collateral); *Travelers Cas. &*

Page 14    Plaintiffs' Motion for Summary Judgment
Against Defendants Lawrence & Barbara Sitz

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

*Sur. Co. of Am. v. Jadum Constr., Inc.*, 2003 WL 21653368 (D. Mass. July 11, 2003) (granting summary judgment and entering judgment against indemnitor).

As set forth below, the material facts are undisputed, and the claims asserted by Zurich fall squarely within the type routinely resolved on summary judgment. Accordingly, the 2018 GAI should be enforced as a matter of law against the Sitzes.

**B.**    **The 2018 GAI is Enforceable Against the Sitzes**

      1.    <u>Courts Routinely Enforce Indemnity Agreements in Favor of Sureties Because of the Vital Role They Play in the Construction Industry.</u>

The primary purpose of an indemnity agreement, such as the one at issue here, is to shift the financial burden arising from the principal's (Emerick) default from the surety back to the indemnitors. By issuing performance and payment bonds, the surety initially assumes significant financial risk on behalf of the principal, with limited control over the principal's performance. *Masterclean, Inc. v. Star Ins. Co.*, 347 S.C. 405, 414, 556 S.E.2d 371 (2001). However, indemnity agreements explicitly transfer this risk of loss back to the indemnitors, ensuring that any financial liabilities incurred by the surety are ultimately borne by the indemnitors. *See Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 203–04 (4th Cir. 2002). Thus, indemnity agreements are vital protective measures designed expressly for the benefit of the surety.

Courts nationally have recognized that sureties play a vital role in the construction industry. *See, e.g., General Accident Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.*, 975 F.Supp. 511, 516 (S.D.N.Y. 1997) (Sureties' rights are liberally construed and enforced due to important function they serve in the construction industry); *Feibus*, 15 F.Supp.2d at 584 (Sureties enjoy substantial discretion because of their important role in the construction industry). Therefore, if a surety is called upon to discharge an obligation of its principal, it may enforce

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

several common law rights, including its common law right to indemnity. *Inland Empire Dry Wall Supply Co. v. W. Sur. Co.*, 197 Wn. App. 510, 537, 389 P.3d 717 (2017). To confirm these common law rights, sureties use written indemnity agreements obligating the indemnitors to indemnify the surety for all expenditures arising out of execution of the bond. *Id.* at 537 ("Typically an indemnity agreement between the principal and surety confirms this common law [right to reimbursement].").

These expansive indemnity agreements are commonplace in the surety industry and reflect the method by which sureties underwrite bonds, which is on a "zero loss" basis. With an indemnity agreement holding the surety harmless from any loss, the bond premium is quite small and essentially is a fee to the surety for extending credit. *See*, Managing and Litigating the Complex Surety Case, ABA (1998), at page 125 (Bonds function as credit accommodations and surety anticipates no loss); *see also*, Trecker & Ott, The Agreement of Indemnity, ABA (1989) (Surety's premium not actuarially based but rather represents a fee for extension of credit; relying on the enforceability of the indemnity agreement the surety assumes no loss in calculating its premium). Thus, unlike insurance companies which assume a certain loss when underwriting policies based on actuaries, sureties essentially extend credit for a nominal processing fee. However, the nominal cost of surety bonds is only made possible by a surety's ability to rely upon its written indemnity agreements, which, when enforced, provide for a zero-loss scenario.

2.    The Indemnity Agreement is Binding Under Oregon Law

Because this dispute arises from the interpretation and enforcement of a written indemnity agreement, the Court applies ordinary principles of contract interpretation. In this diversity action, Oregon substantive law governs. *Heine v. Bank of Oswego*, 144 F. Supp. 3d 1198, 1209 (D. Or. 2015).

Page 16    Plaintiffs' Motion for Summary Judgment
         Against Defendants Lawrence & Barbara Sitz

Under Oregon law, indemnity agreements are interpreted according to the same principles applicable to any other contract. Courts apply the ordinary rules of contract construction and enforce such agreements in accordance with their plain terms. *Union Oil Co. of Cal. v. Lull*, 220 Or. 412, 425–26, 349 P.2d 243 (1960); *Cook v. S. Pac. Transp. Co.*, 50 Or. App. 547, 551, 623 P.2d 1125 (1981). As the Oregon Court of Appeals has explained, "[l]ike other contracts, indemnity agreements are usually to be interpreted according to the plain meaning of the language employed, where such meaning is unambiguously expressed." *State ex rel. Dep't of Forestry v. PacifiCorp*, 236 Or. App. 326, 333, 237 P.3d 861 (2010), *opinion adhered to as modified*, 237 Or. App. 228, 239 P.3d 503 (2010) (internal quotations omitted).

Oregon courts have consistently held that "[i]f the provisions of a contract are plain and unambiguous, the contract must be enforced according to its terms." *Valenti v. Hopkins*, 324 Or. 324, 331, 926 P.2d 813 (1996); *see also Cent. Or. Indep. Health Servs., Inc. v. State*, 211 Or. App. 520, 528, 156 P.3d 97 (2007) ("A party is entitled to summary judgment on a contract dispute if the governing terms of the contract are unambiguous."). Likewise, it is well-established that "[i]n the absence of special circumstances, a person who signs a written instrument embodying an agreement is bound by the terms of the agreement." *Knappenberger v. Cascade Ins. Co.*, 259 Or. 392, 397, 487 P.2d 80 (1971).

Where, as here, the language of the indemnity agreement "clearly and explicitly provides that a party will be indemnified for a particular loss… the inquiry ends, and the provision is enforced." *PacifiCorp*, 236 Or. App. at 333. The interpretation of an unambiguous contract is a question of law for the Court and is appropriately resolved on summary judgment. *Quillin v. Peloquin*, 237 Or. 343, 346, 391 P.2d 603 (1964); *Cent. Or. Indep. Health Servs.*, 211 Or. App. at 528. The Ninth Circuit has likewise recognized that a surety "is entitled to stand upon the letter

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

of his contract" and to enforce its terms strictly. *Commercial Ins. Co. of Newark, N.J. v. Pacific–Peru Constr. Co.*, 558 F.2d 948, 953 (9th Cir. 1977).

The 2018 GAI is a valid and enforceable contract. It expressly requires the Sitzes to indemnify Zurich for all "Loss"—defined broadly to include liabilities, costs, attorneys' fees, and other expenses arising from the issuance of bonds. ECF No. 1-1, Ex. A ¶¶ 2, 30. These indemnity obligations are triggered not only upon payment by Zurich, but also when a claim is asserted. *See Fireman's Fund Ins. Co. v. Nizdil*, 709 F. Supp. 975, 976–77 (D. Or. 1989).

Here, Zurich has presented undisputed evidence of its losses resulting from Emerick's defaults and bond claims, triggering the Sitzes' indemnity obligations. Zurich's verified loss statements and declaration from its authorized representative constitute prima facie evidence of Zurich's loss and the liability of the Sitzes to indemnify Zurich. ECF No. 1-1, Ex. A ¶ 2.

Moreover, this Court has already adjudicated the validity and enforceability of these same indemnity provisions in this very case. In granting default judgment against the other indemnitors, the Court determined that "Zurich has the right to be indemnified by Defendants for any loss incurred for posting the bonds," and that the failure to indemnify Zurich "constitutes a material breach." ECF No. 39 at 10 – 11. The Court further concluded that Zurich's "breach of contract claim is meritorious." *Id*. at 11. The indemnity obligations at issue here are the same.

Accordingly, because the 2018 GAI is valid, unambiguous, and has been breached, summary judgment in Zurich's favor on the indemnity claim is appropriate.

## C.    The Sitzes' Obligations Under the 2018 GAI Were Never Terminated

The Sitzes seek to avoid their obligations under the 2018 GAI by claiming that they were informally removed from the agreement and that a subsequent indemnity agreement replaced it. *See* ECF No. 33 at 8 – 9. Each of these arguments fails as a matter of law. The plain terms of the

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

2018 GAI foreclose any such defenses, and the undisputed facts establish that the Sitzes remain jointly and severally liable under the agreement.

      1.    <u>The Sitzes Never Complied with the Written Termination Requirements of the 2018 GAI</u>

The 2018 GAI expressly provides that the indemnitors' obligations are "continuing" and that the agreement "remains in effect until terminated and released by [Zurich]." ECF No. 1-1, Ex. A ¶ 25. It also sets forth a clear and exclusive procedure for terminating an indemnitor's obligations:

> Any Indemnitor may terminate their participation in this Agreement… by sending written notice of termination to Surety at the address provided in Paragraph 20.

*Id.* Moreover, the 2018 GAI expressly provides that it "shall only be changed or modified in writing." *Id.* at ¶ 23.

It is undisputed that neither Lawrence nor Barbara Sitz ever submitted written notice of termination to Zurich as required by the 2018 GAI. After conducting a diligent search of its underwriting and indemnity records, Zurich confirmed that it never received any written notice of termination from the Sitzes. Schumacher Decl. ¶ 5. Consistent with Zurich's regular business practices, Zurich also does not possess any written acknowledgment confirming receipt of a termination notice—an acknowledgment that Zurich would issue in the ordinary course of business upon receipt of such notice. *Id.* ¶¶ 4, 7. Nor has Zurich ever issued any written release discharging the Sitzes from their obligations under the 2018 GAI. *Id.* ¶ 8. Accordingly, because the Sitzes failed to comply with the Agreement's exclusive termination procedure, their indemnity and collateral security obligations remain in full force and effect as a matter of law.

The written termination requirement in Paragraph 25 is not a technicality—it serves a vital function. By requiring written notice, the provision ensures clarity, predictability, and

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

finality in the parties' contractual relationship. It eliminates precisely the type of informal, conflicting, and unverifiable claims that the Sitzes now raise. Their assertion that they were removed from the 2018 GAI rests entirely on alleged oral discussions between co-defendant Corey Lohman and Zurich representatives in 2021. *See* ECF No. 33 at 1. But there is no written agreement, correspondence, or formal acknowledgment by Zurich reflecting any such discussion or termination. Most importantly, there is no evidence that the Sitzes themselves ever provided Zurich with written notice requesting termination pursuant to Paragraph 25—as the 2018 GAI unambiguously requires.

Courts routinely enforce written termination provisions in indemnity agreements and reject attempts to override them based on hearsay, assumptions, or informal communications. *See, e.g., Developers Sur. & Indem. Co. v. Chrisellie Corp.*, 497 F. Supp. 3d 9, 20 (W.D. Pa. 2020) (indemnitors remained bound where they "never implemented the steps" to revoke their obligations); *Developers Sur. & Indem. Co. v. Barlow*, 628 F. App'x 980, 984 (10th Cir. 2015) (surety's insistence on written termination notice was "reasonable" under express contract terms); *Auto-Owners Ins. Co. v. Classic Carpet & Tile, Inc.*, No. 08-10020, 2009 WL 350750, at *3 (S.D. Fla. Feb. 12, 2009) ("Without properly modifying the Agreement in writing, they are still liable."); *Arch Ins. Co. v. FTR Int'l Inc.*, No. CV12-2544, 2013 WL 11328454, at *4 (C.D. Cal. Mar. 15, 2013) (termination ineffective where "Indemnity Agreement was never terminated according to its terms"); *Ohio Farmers Ins. Co. v. Special Coatings, LLC*, No. 3:07-1224, 2008 WL 5378079, at *20, *24 (M.D. Tenn. Dec. 23, 2008) (facsimile did not satisfy indemnity agreement's written termination requirement; summary judgment granted to surety).

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

The Sitzes' failure to follow the unambiguous written procedure outlined in the 2018 GAI is dispositive. Their obligations remain enforceable, and there is no genuine dispute of material fact as to their continuing obligations to Zurich. Summary judgment is therefore warranted.

2.  The 2022 GAI Did Not Supersede or Novate the 2018 GAI.

The Sitzes' suggestion that the 2022 GAI somehow discharged their obligations under the 2018 GAI fails both contractually and legally. ECF No. 33 at 3. Paragraph 25 of the 2018 GAI contains a specific anti-novation clause, stating:

> The execution of any subsequent agreements of indemnity in favor of Surety by any Indemnitor shall not be construed as a novation, and this Agreement may only be terminated as provided herein.

ECF No. 1-1, Ex. A ¶ 25.

The 2018 GAI further reinforces this position in Paragraph 15, which provides that Zurich's rights under the agreement are "in addition to" any rights under other indemnity agreements and that the execution or modification of other indemnity agreements does not affect the binding nature of the 2018 GAI. *Id.* ¶ 15. These provisions, considered together, foreclose any claim that the 2022 GAI replaced or extinguished the obligations set forth in the 2018 GAI.

Oregon law is clear that "[n]ovation is never presumed" and must be proven by "legal and sufficient evidence." *Pekkola v. Fid. Nat'l Title Ins. Co.*, No. 6:12-CV-02147-PA, 2013 WL 3873233, at *4 (D. Or. July 25, 2013). Here, the Sitzes offer no evidence—much less sufficient evidence—of an agreement to discharge their obligations under the 2018 GAI. The 2022 GAI cannot function as a novation because the 2018 GAI expressly prohibits that interpretation.

Courts nationwide consistently enforce such anti-novation clauses and reject attempts to argue that a later agreement supersedes a prior one without clear evidence of intent to replace. *See Philadelphia Indem. Ins. Co. v. Reytech Servs., L.L.C.*, No. 20-11274, 2021 WL 4142390, at

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

*3 (5th Cir. Sept. 10, 2021); *Merchants Bonding Co. v. Burnside*, No. 4:22-CV-3651, 2023 WL 4140455, at *3 (S.D. Tex. June 21, 2023) ("It is not an automatic legal principle that a later signed indemnity agreement will replace an earlier one.").

Together, the plain language of the 2018 GAI and the applicable case law foreclose any suggestion that the 2022 GAI extinguished the Sitzes' ongoing obligations. The 2018 GAI includes an express anti-novation clause and limits termination to a specific written procedure, which the Sitzes indisputably never followed. Their reliance on changed circumstances, informal conversations, or later agreements cannot override their continuing, express contractual obligations. Because the Sitzes failed to comply with the exclusive termination provision and have not been released by Zurich in writing, their obligations under the 2018 GAI remain fully enforceable as a matter of law. Summary judgment is therefore appropriate.

## VI. CONCLUSION

The 2018 GAI is binding on Lawrence and Barbara Sitz, who knowingly signed it and agreed to its continuing obligations. It is undisputed that the Sitzes have breached those obligations by failing to indemnify Zurich. This Court has already determined that the Declaration of James Hamel is sufficient to support an award of damages under the 2018 GAI, and it entered default judgment against the other indemnitors based on the same evidence.

The only defense the Sitzes have raised—that their obligations under the 2018 GAI were somehow terminated—is flatly contradicted by the facts, the express language of the agreement, and controlling law. There is no allegation – much less evidence – that the Sitzes ever complied with the agreement's exclusive written termination procedure, and the agreement expressly prohibits termination through oral communications or subsequent indemnity agreements.

**FRIEDRICH & DISHAW, PLLC**
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

Accordingly, there are no genuine issues of material fact, and Zurich is entitled to judgment as a matter of law. Summary judgment should be entered against Lawrence and Barbara Sitz, jointly and severally, awarding Zurich damages in the amount of $23,506,646.25.

Dated February 27th, 2026.

FRIEDRICH & DISHAW, PLLC

/s/ Paul K. Friedrich
Paul K. Friedrich, OSB #171695
Friedrich & Dishaw, PLLC

*Attorney for Plaintiffs*
*Zurich American Insurance Company*
*Fidelity and Deposit Company of*
*Maryland*

## CERTIFICATE OF COMPLIANCE

This motion complies with the applicable word-count limitation under LR 7-2(b) because it contains 6,581 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.